# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BETTY A. JACOBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 10-cv-422-WDS** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **AGRICULTURE AGENCY, and GARY** | ) | |
| **MERSINGER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court are three pending motions: (1) defendants' consolidated motion to dismiss Counts 3 and 4 and all allegations of constructive or wrongful discharge (Doc. 44), to which the plaintiff filed a response (Doc. 50); (2) defendants' consolidated motion to dismiss defendants Gary Mersinger ("Mersinger") and the United States Department of Agriculture ("USDA") (Doc. 45), to which plaintiff did not file a response; and (3) defendants' consolidated motion for summary judgment (Doc. 53), to which the plaintiff has filed a response (Doc. 54), and defendants a reply (Doc. 57).

## BACKGROUND

This cause of action arises from plaintiff's employment with and eventual resignation from the USDA. Plaintiff was employed by the USDA from approximately June 30, 1997, to April 11, 2008. The pertinent facts regarding plaintiff's employment at the USDA follow.

During her tenure, plaintiff worked as a Rural Development Specialist (a loan specialist) at the USDA Service Center located in the city of Edwardsville, in Madison County, Illinois. As a

loan specialist, plaintiff's job duties included promoting the Rural development loan program, and reviewing credit reports, income, and home appraisals for low income home buyers within a five county area.

Defendant Mersinger was a Rural Development Manager, and plaintiff's supervisor at the service center from June 30, 1997 until October 1, 2007.  Next in plaintiff's supervisory chain of command was James "Rusty" Wanstreet, District Area Director, followed by Douglas Wilson ("Wilson"), State Director, and Marianne Nixa ("Nixa"), Wilson's assistant, and finally, the chain ended with the National Directors.  As of October 1, 2007, the management system was restructured, and Janet Fauth ("Fauth") became the Edwardsville office "office manager," but had no supervisory authority.

Stepping back a few years, during the summer of 2005, plaintiff and Gale Bolen ("Bolen"), plaintiff's co-worker who was employed as a technician at the Edwardsville office, contacted Nixa, to inform her about "concerns" they had about Mersinger.  Nixa set up a mediation among the three parties and Ronald Garland ("Garland"), a USDA employee relations specialist.  At the mediation, held on July 28, 2005, the parties discussed their issues, which Garland described generally as their inability to work well together as a team  (Doc. 53-5 at 8).  At her deposition, plaintiff stated that the issues included Mersinger not answering her questions right away, and Mersinger requesting that plaintiff refer to the appropriate regulations instead of just telling applicants that Mersinger would not approve a loan.  At the end of the mediation, plaintiff, Bolen, and Mersinger signed an agreement regarding the ways in which each of them would alleviate the various issues, for example, each would fill out their calendar, they would hold weekly workload priority meetings, etc.  (Doc. 53-6).

No informal or formal EEO complaint was filed with respect to plaintiff and Bolen's concerns in 2005, and there was no mention whatsoever of issues of race, color, religion, sex, national origin, age, disability status, or retaliation from previous EEO activity at the mediation or in the signed mediation agreement.  Garland stated under oath that the mediation was not an EEO complaint  (Doc. 53-5 at 11).  Plaintiff claims, that she believed this to be an EEO complaint, but produces no evidence whatsoever to support this claim.

Nearly two (2) years later, in March of 2007, plaintiff and Bolen drove together to a training meeting in Peoria, Illinois.  Upon their return, Mersinger questioned plaintiff as to why it took so long for them to return from their trip.  Plaintiff told Mersinger that they had to stop during the drive to take breaks due to her back pain.  She asserts that Mersigner was aware of her back issues, but accused her of wrongdoing, namely, what plaintiff terms "travel fraud," as a form of retaliation.  After a "heated" discussion regarding the appropriate amount of leave time, plaintiff took some leave time for the return trip from Peoria.

Also in 2007, plaintiff was  involved in an investigation of possible loan fraud regarding Mary Goode ("Goode"), an outside real estate agent and contractor who frequently worked with the Rural Development program.  While it is difficult to determine the exact date that suspicions arose regarding transactions with Goode, the record reflects that Mersinger vocalized concerns as early as February 20, 2007, at which time he asked plaintiff if she remembered anything unusual regarding a particular loan closing involving Goode, which the USDA later discovered included an altered loan document (Doc. 53-12 at 2).  Mersinger voiced his suspicions again on  May 22, 2007 (Doc. 53-9), at which time he emailed plaintiff and Bolen about certain issues with a loan closing involving Goode.  The following day, May 23, 2007, Mersinger sent another email to plaintiff and

Bolen stating that no side agreements would be allowed regarding the same Goode closing (Doc. 53-10).  Mersinger also expressed his concerns to Barry Ramsey ("Ramsey"),  Illinois Housing Program Director, in May of 2007 (Doc. 53-8 at 4-5).  At some point thereafter, plaintiff became aware that she, along with Bolen, was being investigated by the USDA with respect to her dealings with Goode.

Later that year, in June or July 2007, during plaintiff's performance evaluation, she was told by Mersinger that she did not project a professional image because she was too friendly and personal with customers, homebuilders, and lenders (Doc. 53-14).

On July 16, 2007, plaintiff emailed images of Mersinger to Nixa, asking her whether the photographs of Mersinger projected a professional image of the USDA (Doc. 53-14).  The images included two (2) photographs of Mersinger wearing bib overalls, a hardhat, toolbelt, and boots, with his arms crossed at his chest.  Mersinger was not wearing a shirt beneath the overalls.  Julie Sweetin ("Sweetin"), an intern, testified that she came up with the idea to take these photographs to add some humor to an otherwise dry powerpoint presentation she was preparing (Doc. 53-7 at 3-4).  The powerpoint also included pictures of Sweetin in a similar outfit, but wearing a sleeveless shirt beneath the overalls.  While plaintiff first referred to these photographs as "unprofessional," she later filed a complaint in which she claimed that the photographs were a form of sexual harassment.

On August 7, 2007, plaintiff submitted an informal EEO complaint in which she alleged Mersinger subjected her to sexual harassment on July 13, 2007, when he had a student female employee take shirtless pictures of him; that plaintiff complained to Nixa about Mersinger's behavior and in response Nixa "attacked" her for an unrelated event; that even though she received a recent positive mid-year performance appraisal, Mersinger "underlined points" in her appraisal

and verbally stated that she was deficient; and that Mersinger made remarks about her known disability (back pains) (Doc. 54-3).

On October 1, 2007, the Edwardsville office was restructured: Mersinger was no longer plaintiff's supervisor, and Fauth joined the office, taking on a number of different tasks.  At this point, plaintiff's job changed so that rather than working in five (5) counties, she thereafter only worked in three (3).  The office loan goals remained the same however, and the responsibility to reach those goals was shared by plaintiff, Fauth, and the other office members.  On October 3, 2007, two days after the office restructuring, plaintiff filed a formal complaint with the USDA, alleging sexual harassment and retaliation by her former supervisor, Mersinger (Doc. 38 at 2).

On November 13, 2007, Wilson, USDA State Director, sent a letter to plaintiff proposing to suspend plaintiff for 5 days without pay as a result of his investigation into plaintiff's dealings with Goode, to which plaintiff was allowed to and did file a reply.  On November 28, 2007, Wilson sent a letter to plaintiff notifying her of the decision he had reached after consideration of her reply (Doc. 54-4).  Wilson determined that: plaintiff admitted to omitting from the loan record any information regarding an altered document that she was aware of, and that her acceptance of a fraudulent document could not be justified by plaintiff's claim that she was "too busy"; plaintiff did not inform Mersinger of the altered document, but allowed the closing to proceed, which resulted in $6000 of loan and grant funds being paid to Goode at the closing, even though those funds should have been applied to the borrowers' account to pay down their loan; plaintiff and Bolen withheld knowledge of the fraudulent inspection document[1] when Mersinger asked them both about it at a

---

[1]The altered document at issue was apparently sent by Goode to the Edwardsville office on December 12, 2006 (Doc. 53-8 at 9).

meeting on February 20, 2007; plaintiff gave Goode preferential treatment by approving a loan closing where funds were paid to Goode based on fraudulent and inadequate documentation; plaintiff's referral of Goode's nephew and employee, Caleb Goode, to Ron Bolen undermined the agency's efforts to make an orderly assessment of the pay-off calculations for this account and interfered with an ongoing appeal; and this action was taken against the decisions made by both Mersinger and the Illinois Housing Program Director, Barry Ramsey, and was done to assist Goode and her family members.

In his decision letter, Wilson expressed concern that plaintiff did not understand the seriousness of her actions as evidenced by her misrepresentation of the issues.  Wilson determined that plaintiff engaged in inappropriate conduct in her dealings with Goode, and that this determination was supported by the evidence and warranted a suspension from duty.  Plaintiff was suspended without pay for five (5) working days from December 6, 2007, through December 12, 2007.

Regarding plaintiff's ongoing EEOC complaint, on January 7, 2008, the USDA accepted an amendment to the EEOC complaint previously submitted by plaintiff, and referred for investigation the following claims:

> Whether the agency subjected the complainant to discriminatory harassment (non sexual) based on age (D.O.B.: 5/18/1946), sex (female), physical disability (acute back pains), and reprisal (prior EEO activity) when allegedly:
> 1. on December 6, 2007, complainant was placed on suspension without pay for 5 days;
> 2. complainant's supervisor had a 21 year old female student employee take a shirtless picture of him, under the disguise [sic] of work related; and
> 3. complainant's supervisor made a statement in her mid-term review that "she did not project a professional image as a USDA employee and that she was unprofessional in her conduct?

(Doc. 54-3 at 4).  Approximately three (3) months later, on April 11, 2008, plaintiff resigned from

6

her position, but alleges that her resignation was "involuntary" (Doc. 38 at 3).

On March 11, 2010, after conducting an administrative review, the EEOC issued a final order in favor of the USDA, and allowed a ninety (90) day period during which plaintiff could file suit. This cause of action was filed pursuant to that order (Doc. 2 at 7).

Plaintiff's Second Amended Complaint (Doc. 38) consists of four enumerated Counts: (I) sexual harassment, (II) retaliation, (III) intentional infliction of emotional distress, and (IV) violation of the Family Medical Leave Act ("FMLA").  Plaintiff also makes general allegations of wrongful or constructive discharge throughout her complaint.

Defendants filed two motions to dismiss (Docs. 44, 45) and a consolidated motion for summary judgment (Doc. 53), in which defendants incorporate all of the arguments from their motions to dismiss, and further assert that plaintiff cannot establish a *prima facie* case for sexual harassment, retaliation, intentional infliction of emotional distress, FMLA interference, or constructive discharge.

Plaintiff filed a response to defendants' first motion to dismiss (Doc. 50), in which she essentially concedes that she "did not make any complaint with the Agency or give notice under F.M.L.A. or a state tort for the intentional infliction of emotional distress as pled under Counts III and IV." (Doc. 50, at 3 para. 11).  Plaintiff then requests that defendants' motion to dismiss be denied as to the retaliation claim.  The only response from plaintiff that the Court can locate in the record with respect to defendants' second motion to dismiss (Doc. 45), is plaintiff's one sentence request in her response to defendants' first motion to dismiss, in which she requests leave to file an amended complaint as to Counts I and II (Doc. 50).  Plaintiff does not state any reason or support whatsoever for this bare and belated request and, and it is therefore **DENIED.**  Plaintiff also filed

a response to defendants' motion for summary judgment (Doc. 54), in which she does not provide any further response to defendants' motions to dismiss, and, in sum, asserts that she has established a *prima facie* case for sexual harassment, retaliation, intentional infliction of emotional distress, FMLA interference, and constructive discharge.

## LEGAL STANDARD

At this stage of the proceedings, the Court must determine whether it shall proceed pursuant to the motion to dismiss legal standard,[2] or whether it may consider all arguments pursuant to the summary judgment standard.

In general, if a court treats a motion to dismiss as one for summary judgment, failure to "provide the litigants with notice and an opportunity to respond can constitute reversible error." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). "Adequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment." *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 433 F.3d 1024, 1029 (7th Cir. 2006). Based upon this premise, defendants' motion for summary judgment effectively converted its previous motions to dismiss into motions for summary judgment, and defendants repeatedly put plaintiff on notice of their intentions to do so (stating no less than three times, on pages 1, 18, and 20, of Doc. 53 that defendants incorporate their motions to dismiss into their motion for summary judgment).

In light of the fact that defendants explicitly stated their desire to incorporate all of their arguments for dismissal into their motion for summary judgment, plaintiff cannot claim surprise or

---

[2]"The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

prejudice for lack of separate and explicit notice from this Court of its intentions to treat the motions to dismiss as motions for summary judgment. *See Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 722 (N.D. Ind. 1996). Defendants submitted a number of exhibits in support of their motion for summary judgment, and incorporate by reference their previous motions to dismiss on at least three occasions. Plaintiff, in response, filed a number of supporting documents in opposition to defendants' motion for summary judgment. Discovery has concluded in this case and both parties have had opportunities to present any materials they desired.

The Court need not, therefore, in these particular circumstances, give additional notice or warning that it will consider matters outside of the pleadings. Plaintiff had the opportunity to respond to each of defendants' arguments with any evidentiary support (outside of that which had been previously barred) that it wished. In light of this, the Court will proceed pursuant to summary judgment standards, and consider the additional evidence submitted in support of and in response to the motions (to the extent it was not previously barred or otherwise inadmissible), and is not limited to the complaint, any exhibits attached thereto, and supporting briefs. *See Thompson*, 300 F.3d at 753.

Summary judgment is proper when the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences and resolve all factual disputes in favor of the non-movant. *Malen v. MTD Products, Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). A court cannot grant summary judgment if a genuine dispute relates to a material fact, meaning that

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-movant fails to establish an essential element, there is a complete failure of proof and the moving party is entitled to judgment as a matter of law. *Id.* at 323. Furthermore, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

With respect to plaintiff's Title VII claims, "[w]hen a federal employee files a Title VII suit in federal court, the district court charged with deciding that action is required to perform a *de novo* review of the record, including administrative agency proceedings." *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006). Thus, this Court need not "defer to the determination of an administrative agency in an action which falls under Title VII of the Civil Rights Act of 1964." *Id.*

## ANALYSIS

### I.  Title VII Claims: Sexual Harassment; Retaliation; General Claims of Constructive Discharge

In the context of federal employment, "[t]he only proper defendant in a Title VII suit is the head of the agency accused of having discriminated against the plaintiff." *McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984); 42 U.S.C. § 2000e-16(c). Counts I and II, and plaintiff's general claims of constructive discharge contained within plaintiff's second amended complaint, are subject to these provisions. Plaintiff has only named Mersinger, an individual, and

10

the USDA, as defendants and, therefore, the Secretary of the Agency, the only proper party with regard to these claims, has not been named.

"Improper denomination of defendants may be waived by the government." *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir. 2000). The government did not waive improper denomination, however, and instead, seeks dismissal of the incorrectly named defendants. New parties, however, "may be . . . added by order of the court on . . . its own initiative at any stage of the action and on such terms as are just.'" *Id.* at 747 n.3 (quoting Fed. R. Civ. P. 21). Additionally, Fed. R. Civ. P. 15(c) provides that "an amendment changing a party relates back to the date of the original pleading if the party being added is a federal agency and process was timely served on the United States Attorney (or designee), the Attorney General, or an 'agency or officer who would have been a proper defendant if named.'" 215 F.3d at 747, n.3 (quoting Fed. R. Civ. P. 15(c)).

Instead of dismissing these claims at this late stage in the proceedings, the Court notes that the U.S. Attorney's office has been on notice of these claims since the beginning of the proceedings, and the U.S. Attorney's office, in fact, defended the case on behalf of both Mersinger and the USDA. In light of this, the risk of prejudice to the government as a result of party substitution is very low, and the interests of justice would be best served by simply substituting the proper party at this point in accordance with Fed. R. Civ. P. 15 and 21, instead of requiring the refiling of motions and responses which have already addressed the substance and merits of the issues in this case. *See id*. The Court, therefore, **FINDS** that this issue would be justly and most expeditiously resolved by substituting the proper defendant instead of dismissing plaintiff's claims and requiring the plaintiff to start over in federal court, which would be an enormous waste of the resources already expended to develop the case to its current state. *See id*.

11

The Court, therefore, **HEREBY DISMISSES** defendant Mersinger and defendant USDA as to Counts I and II, and any claims of constructive discharge contained in plaintiff's second amended complaint, and **SUBSTITUTES** Tom Vilsack, Secretary of the Department of Agriculture, as the proper party defendant to plaintiff's claims arising under Title VII, namely, Counts I and II and any claims of constructive discharge alleged in plaintiff's second amended complaint. Any future filings shall reflect this substitution, and the docket sheet shall be modified accordingly.

### a.  SEXUAL HARASSMENT

Plaintiff vaguely claims she was subjected to numerous occasions of sexual harassment by her supervisor, Mersinger, but specifically alleges only two: (1) Mersinger published inappropriate photographs of himself and a young, female coworker; and (2) Mersinger made demeaning and offensive remarks to plaintiff.  Plaintiff essentially claims a combination of sexual harassment and hostile work environment.

"Hostile or abusive work environments are forms of sex discrimination actionable under Title VII of the Civil Rights Act of 1964."  *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). To establish a *prima facie* case, the plaintiff must show that: "she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." *Id*.  The Court evaluates each element "in light of the 'particular facts and circumstances' of the case."  *Id*. (quoting *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 382 (7th Cir. 2002)).  In cases involving allegations of sexual harassment against a supervisor, the employer "will be held strictly liable for the alleged conduct if there was a tangible employment action such as a discharge, demotion, or change in working conditions."  *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009).

12

One such tangible employment action is a constructive discharge.[3]  *Id.*

"[I]n order to be actionable . . . a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  Courts are directed to "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 787-88 (internal quotations omitted).  Furthermore, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. at 788 (internal citation and quotations omitted).

"It is not enough that a supervisor or coworker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor.  Such failures are too commonplace in today's America, regardless of the sex of the employee, to be classified as discriminatory." *Minor v. Ivy Tech State College*, 174 F.3d 855, 858 (7th Cir. 1999).  "The 'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007)[4] (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

---

[3]In light of the fact that defendants claim that plaintiff failed to raise constructive discharge in her EEOC claim, and is therefore precluded from asserting it here, for purposes of clarity, the Court will address this issue in a separate section below.

[4]  In *Kampmier*, 472 F.3d at 941, the Seventh Circuit collected its previous rulings to compare conduct which would be considered merely objectionable with conduct which would be considered harassment:

      This Court has on many occasions distinguished between harassing and merely

Plaintiff's first claim of sexual harassment refers to photographs of Mersinger.   The photographs at issue, taken sometime in 2007 by an intern, Sweetin, were inserted into a power-point presentation prepared by Sweetin (Doc. 53-17).   The photographs show Mersinger wearing overalls with no shirt underneath, a hard hat, tool belt, and shoes, with his arms crossed. Mersinger's body is completely covered with clothing, with the exception of part of his face, part of his upper chest and neck, his arms and shoulders, and a small section of his torso, from directly beneath his left arm to his waist.   Sweetin was also photographed in a similar outfit, wearing overalls with a sleeveless shirt underneath, a hard hat, tool belt, and shoes, with her arms crossed.   Sweetin's body is completely covered with clothing, with the exception of her arms, shoulders, face, and neck.

---

objectionable conduct. *See, e.g., Hilt–Dyson v. City of Chi.*, 282 F.3d 456, 463–64 (7th Cir. 2002) (holding that plaintiff's allegations that a supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create a sufficient inference of a hostile work environment); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that plaintiff's complaints of eight gender-related comments during the course of her employment, including that "the only valuable thing to a woman is that she has breasts and a vagina," was insufficient to demonstrate a hostile work environment); *Adusumilli v. City of Chi.*, 164 F.3d 353, 361–62 (7th Cir.1998) (holding that plaintiff's complaints of teasing; ambiguous comments about bananas, rubber bands, and low-neck tops; staring and attempts to make eye contact; and four isolated incidents where a co-worker briefly touched her arm, fingers, or buttocks did not constitute sexual harassment). In short, minor or isolated incidents are generally insufficient to rise to the level of objectively offensive conduct.

By contrast, sustained physical contact can raise otherwise merely objectionable conduct to the level of objectively offensive conduct. For instance, in *King v. Board of Regents of University of Wisconsin System*, 898 F.2d 533, 535 (7th Cir.1990), this Court concluded that the defendant's conduct rose to an objectionable level when he followed the plaintiff into a bathroom at an office holiday party, telling her that he "had to have her" and that "he would have her." Despite the plaintiffs protests, the defendant forcibly kissed and fondled her, stopping when the plaintiff's boyfriend came into the bathroom. *Id.* Similarly, in *Gentry v. Export Packaging, Co.*, 238 F.3d 842 (2001), this Court held that the defendant's constant physical contact with the plaintiff to be objectively offensive. In that case, the defendant invited the plaintiff implicitly to have sex with him and showed her arguably "off color" pictures. Moreover, the defendant hugged the plaintiff "with two-armed embraces" almost every other working day for two months. *Id.* at 850–51.

Notably, during her deposition, plaintiff admitted that she was not present when the pictures were taken, she was not involved in preparing the power-point presentation, she was not present when the power-point presentation was presented, nor did she receive a paper copy of the presentation.  Furthermore, Mersinger did not show the pictures or power-point presentation to plaintiff or discuss them with her, nor did he ask her to pose for similar pictures.  Plaintiff became aware of the pictures via either Sweetin or Bolen, and she voluntarily accessed the power-point presentation file from her computer.

Plaintiff, during her deposition, asserted that she found the photographs offensive because Mersinger was a supervisor in a working environment, he was with a college student, he took his shirt off during the day, wore bib overalls which were not buttoned up and therefore showed skin, and the images were put on a government computer.  Further, plaintiff admitted that she forwarded the power-point presentation to two other women, but did not consider her own activity of sending these so-called offensive pictures to others via government email to constitute harassment.  Plaintiff also admits that although Sweetin took the pictures and admitted that the concept was her own idea, plaintiff did not file a sexual harassment claim against Sweetin.

Defendants also provided evidence that the plaintiff received a number of unrelated emails at her work email address, including photographs of men who plaintiff admits are wearing less clothing than Mersinger, but plaintiff did not file sexual harassment claims based on these photographs.  One such email contained a picture of a man from the rear view with his buttocks showing, and who was only wearing boots, wings, and a halo, to which plaintiff responded "That's too funny."  (Doc. 53-2 at 21).  Plaintiff forwarded the email containing this photograph to her

15

husband and daughter.

Regarding the second alleged claim of sexual harassment, namely, the so-called demeaning and offensive remarks made by Mersinger, plaintiff claims that he told someone that sweatpants were unprofessional, and claims that Mersinger never told younger female employees *not* to wear "tight, skimpy clothing."  Plaintiff never alleges that Mersinger spoke to her about her attire, that she wore sweatpants or tight clothing, or that she or others were encouraged to wear tight or skimpy clothing.

Upon consideration of both the specific facts and totality of the circumstances of this case, the plaintiff utterly fails to establish or raise a genuine issue of material fact as to a single element of a prima facie case of hostile work environment based on sex discrimination with regard to either of her enumerated claims.

Plaintiff has failed to present evidence that she meets the first prong of a prima facie case: that she was subjected to unwelcome sexual conduct.  The photographs were not of a sexual nature, nor was plaintiff "subjected" to view them or participate in their production.  In other words, Mersinger never showed the pictures to plaintiff, or discussed them with her, and the pictures were simply saved as a power-point presentation in a directory that was accessible to her.  According to the Supreme Court, "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided."  *Faragher*, 524 U.S. at 807.  Defendants are entitled to summary judgment based on the failure of this element alone.  *See Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

As noted above, the plaintiff must show that the conduct was both objectively and

16

subjectively offensive for her claim to survive. *Kampmier*, 472 F.3d at 941.  Plaintiff has shown neither.  While plaintiff may not have liked the pictures of Mersinger in overalls, or personally found it to be unprofessional, she cannot make a claim that these photographs were subjectively sexually offensive, in that her own work email account contained pictures of males wearing far less clothing, one of which contained a photograph showing the full buttocks of a male, which she found humorous and even forwarded to her own daughter.  Plaintiff's own actions therefore, make it unbelievable to this Court that she could find the photographs to be unwelcome sexual conduct that made her work environment intolerable.  She tolerated, and, in fact, generated further distribution of images that were more revealing, and therefore could be considered much more sexual in nature than the one of Mersinger.

Furthermore, a general comment that sweatpants are unprofessional, is completely gender neutral and related to work attire in general.  Notably, the comment was not even made to the plaintiff.  Further, Mersinger's alleged failure to ask young female employees not to wear skimpy clothes, cannot, in any way, be deemed sexual harassment.  Plaintiff never asserts that she informed her superiors that she found the clothing of other employees offensive, or that any sexually "tinged" comments were made about the clothing of other workers.  A supervisor's lack of attention or failure to comment on an issue that he was not even aware was an issue, cannot possibly be the basis for liability for sexual harassment.

Following the same reasoning as above, the plaintiff completely fails to present evidence to meet the third prong of a prima facie case, that this conduct was severe or pervasive enough to create a hostile work environment.  Plaintiff refers to isolated incidents which were not severe, nor were they pervasive by any standard.   The mere fact that Mersinger was plaintiff's supervisor does not

17

change the fact that such photographs could not be deemed to create a work environment that a reasonable person would find intolerable, and at the very most might be considered a minor, isolated, mildly offensive incident.  *See Kampmier*, 472 F.3d at 941. Nor can Mersinger's lack of comment on skimpy clothing amount to a severe or pervasive violation.  Even assuming, strictly for the sake of argument, that Mersinger's conduct did constitute sexual harassment, plaintiff presented no evidence that the conduct was frequent, was physically threatening or humiliating, interfered with her work performance, or was so extreme that it amounted to a change in the terms or conditions of employment.  *Id*. The plaintiff has presented no evidence that a reasonable person would find these instances so severe or pervasive as to create a hostile work environment, and plaintiff, therefore, fails to establish the third element of a prima facie case.

Regarding the second required element of a prima facie case, plaintiff failed to adduce any evidence that there is a triable issue as to whether Mersinger's alleged "offensive" conduct was because of, or based on, plaintiff's gender.  *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997).  She simply presents nothing to address this element.  Plaintiff also fails to present any evidence to fulfill the fourth prong, that there is a basis for employer liability based on any of Mersinger's conduct.  *See Lapka*, 517 F.3d at 984.

Accordingly, the Court **FINDS** that plaintiff has not presented a genuine issue of material fact as to any essential element of either of her claims of sexual harassment, and has completely failed to present any evidence to support the essential elements of these claim for which she carries the burden of proof.  Accordingly, the Court **GRANTS** defendants' motion for summary judgment on Count I - sexual harassment.

**b.  RETALIATION**

Plaintiff claims she suffered retaliation as a result of her EEOC activity.  "Section 2000e-3(a)
of Title VII forbids an employer from discriminating against an employee . . . because that
individual opposed any practice made unlawful by Title VII or made [a] charge, testified, assisted,
or participated in a Title VII proceeding." *Lapka*, 517 F.3d at 985 (internal quotations omitted).  To
establish a claim of retaliation, "a plaintiff must show that a reasonable employee would have found
the challenged action materially adverse," meaning that "it well might have dissuaded a reasonable
worker from making or supporting a charge of discrimination." *Id.* at 985-86 (internal quotations
omitted).  Materially adverse actions include:  "'termination of employment, a demotion evidenced
by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly
diminished material responsibilities, or other indices that might be unique to a particular situation.'"
*Id*. at 986 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.
1993)).  The Seventh Circuit "has cautioned, 'not everything that makes an employee unhappy is
an actionable adverse action.'" *Lapka*, 517 F.3d at 986 (quoting *Smart v. Ball State Univ.*, 89 F.3d
437, 441 (7th Cir. 1996)).

Retaliation may be established using the direct or indirect method of proof.  *Benders v.
Bellows and Bellows*, 515 F.3d 757, 764 (7th Cir. 2008).  To survive summary judgment under the
direct method of proof, the plaintiff  "must present direct evidence that: (1) she engaged in
statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a
causal connection between the two." *Id.*  Direct evidence, such as, an admission by the employer,
and circumstantial evidence, from which intentional discrimination can be inferred, may be
considered.  *Id.*  "The focus of the direct method of proof thus is not whether the evidence offered

is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006)). Essentially, the plaintiff must show that she suffered an adverse employment action "as a result" of being a member of a protected class. *Atanus*, 520 F.3d at 672. The Court notes, as instructive, the following examples of circumstantial evidence demonstrating intentional discrimination:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is pretext for discrimination.

*Id.* (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). Timing can be important, but it alone cannot establish a genuine issue of material fact. *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011).

To survive summary judgment under the indirect method, the plaintiff must present evidence that "'(1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner.'" *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 782 (7th Cir. 2006) (quoting *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002)). Under this method, plaintiff "need not show even an attenuated causal link" between the adverse employment action and the protected conduct. *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005) (internal quotation omitted).

If plaintiff presents evidence to establish a prima facie case of retaliation under either the direct or indirect method of proof, the Title VII claim survives summary judgment unless the

20

defendant presents unrebutted evidence that the plaintiff would have been subject to the adverse employment action absent her participation in the protected activity. *See Benders*, 515 F.3d at 764. If there is a genuine issue of material fact as to whether the defendant's explanation is pretext for retaliation, in other words, plaintiff points to specific facts that "cast doubt" on the defendant's explanation, summary judgment is not appropriate *Id*

Whether proceeding under the indirect or direct method, plaintiff must show she engaged in "protected activity," or lodged a complaint about discrimination.  Plaintiff asserts that she first engaged in protected activity under Title VII during the mediation in 2005 attended by plaintiff, Bolen, Mersinger, and Garland, the mediator.  Defendant submitted deposition testimony of Garland, who stated that the mediation was not an EEO proceeding, and that there was no mention made at the mediation of issues of race, sex, age, disability status, or retaliation from previous EEO activity (Doc. 53-5 at 11).  Defendant also presented deposition testimony of Mersinger, which was consistent with Garland's statements, in that he stated that the mediation was not an EEO matter, there was no mention of race, sex, age, disability status, or retaliation from previous EEO activity, and that all of the issues discussed were summarized in writing and signed by the parties.  (Doc. 53-3 at 6).

Additionally, defendant presented a copy of the mediation agreement signed by Mersinger, Bolen, and plaintiff, which further corroborates the testimony of Mersinger and Garland that the agreement does not make any reference whatsoever to Title VII issues, but instead, refers to general office grievances and procedures, such as: date and time of weekly meetings, the procedure for scheduling interview times, Mersinger's responsibilities regarding "504 interviews," and how Mersinger and Bolen will work together on these; Mersinger and Bolen's agreement regarding

21

mathematical review of income calculations; everyone's efforts to better explain loans to customers, including Mersinger's agreement to email his spreadsheet to plaintiff; plaintiff's agreement to refer to and cite regulations to applicants rather than stating that "Gary won't approve the loan;" and that plaintiff and Bolen now felt comfortable to raise issues with Mersinger and they agreed to give him feedback when they "think he is being disrespectful or wasting time on lower priority items."  (Doc. 53-6).

Plaintiff baldly states that she believed she filed an EEO complaint in 2005, resulting in the mediation, and that she immediately suffered retaliation thereafter.  Plaintiff provides no evidence to support this assertion, however, nor has she provided any evidence to dispute the credibility of the deposition testimony of Garland or Mersinger or the documented mediation agreement which plaintiff herself signed.  Because plaintiff presented nothing besides her own bald assertions that the 2005 mediation constituted statutorily protected activity, plaintiff has failed to raise a genuine issue of material fact with respect to this aspect of her claim.  No reasonable jury could find that the mediation that occurred in 2005 was based on race, color, religion, sex, national origin, age, disability status, or retaliation from previous EEO activity, and therefore constituted protected action under Title VII.  Plaintiff cannot, therefore claim retaliation on the basis of the 2005 mediation through either the direct or indirect method, because plaintiff fails the first element of each, in that she did not engage in statutorily protected activity, nor did she complain of discrimination.

It is undisputed, however, that the plaintiff filed an informal EEOC complaint based on sexual harassment on August 7, 2007, followed by a formal EEOC complaint on October 3, 2007. (Doc. 38 at 2).  Plaintiff, therefore, has established that she first engaged in statutorily protected activity on August 7, 2007, and plaintiff may support her retaliation claim with alleged retaliatory

conduct that occurred after August 7, 2007.  This limitation serves to exclude plaintiff's claims of

any allegedly retaliatory activity which occurred before August 7, 2007, including any alleged

remarks made by Mersinger regarding the 2005 mediation, Mersinger's comment at her performance

evaluation in June or July 2007 that she was "unprofessional," and plaintiff's claim that Mersinger

falsely accused plaintiff of "travel fraud" in March of 2007.

Regarding potential adverse actions that occurred within the relevant time frame, plaintiff

essentially makes two claims: (1) her working conditions were changed as of October 1, 2007; and

(2) she was subjected to discipline, including a five day suspension without pay, which occurred in

December of 2007.[5]

At the outset, the plaintiff has not established that the change in her working conditions in

October of 2007 constituted a materially adverse employment action.  Plaintiff must at least raise

a genuine issue of material fact regarding whether a reasonable employee would have found the

action materially adverse, meaning that it would dissuade a reasonable worker from making a charge

of discrimination.  *Lapka*, 517 F.3d at 985-86.  At her deposition, plaintiff testified that her job

duties changed in that two counties in which she had worked and developed customers and banking

contacts, namely, Madison County and St. Clair County, were taken from her, meaning that she

could not process loans from those areas. This change occurred when the office was entirely

restructured-- Fauth joined the office, and Mersinger was no longer plaintiff's supervisor.  Plaintiff

admitted that she had conversations with Fauth about the division of work responsibilities, and that

she and Fauth divided the office guarantee loan goals, and in fact everyone in the office was

---

[5]Plaintiff also claims that she was constructively discharged in 2008, based in part, on retaliation.
The Court will consider this issue in a separate section below.

responsible for the set goals, not just the plaintiff.

Plaintiff conceded that she felt personally responsible for the goal number although she now had less counties in which she could accomplish that goal–but that this was, essentially, pressure she had put on herself because the goals were in fact shared by all of the office members.  Plaintiff did not suffer a demotion evidenced by a decrease in wage or salary, her title did not change, she did not lose material benefits, and did not have significantly diminished material responsibilities.  She simply could not process loans from two (2) counties in which she previously had conducted business to meet her goals, but her goals were not increased, nor were her material responsibilities diminished.  While plaintiff may not have been happy with this change, and it caused her to put more pressure on herself, her unhappiness does not necessarily make the action actionably adverse. *Lapka*, 517 F.3d at 986.  The Court will assume, however, strictly for the sake of argument, that plaintiff has at least raised a genuine issue of material fact, e.g., that her change in job duties constituted an adverse employment action.

Further, plaintiff does not inform the Court under which method of proof she intends to proceed,  and the Court will, therefore, consider plaintiff's claims under both methods.  Under the direct method, plaintiff has not provided any direct evidence of retaliation, nor has she provided circumstantial evidence that shows that plaintiff's job duties changed because of, or as a result of, her EEOC complaint.  Plaintiff's claim fails under the direct method, therefore, because she has not shown a causal connection between the change in her job duties and her EEOC complaint.

Plaintiff also fails to establish a claim of retaliation based on her change in job duties under the indirect method.  She has presented absolutely no evidence that a similarly situated employee who did not file an EEOC complaint did not have a change in job duties, and therefore fails to meet

the second prong of her prima facie case.  Plaintiff also failed to present evidence that she was performing her job in a satisfactory manner, thereby failing the fourth prong.

Assuming arguendo that plaintiff did present a prima facie case under either method, the defendant presented evidence that the entire state office was undergoing restructuring, and plaintiff was not the only employee whose duties changed, and, in fact, Mersinger's duties changed, as he was no longer plaintiff's supervisor.

Plaintiff's second allegation of retaliation refers to an internal investigation involving Goode. Plaintiff alleges that the investigation into the suspected mortgage fraud scheme resulting in a five (5) day suspension without pay, was motivated by retaliatory animus.  While plaintiff's suspension occurred in December of 2007, after her formal and informal EEOC complaints were lodged, defendants presented evidence that Mersinger and others held suspicions regarding loans involving plaintiff, Bolen, and Goode, long before plaintiff filed her EEOC complaint.  The record reflects that Mersinger had suspicions as early as February 20, 2007, at which time he asked plaintiff if she remembered anything unusual regarding a particular loan closing involving Goode, which included an altered loan document.  Mersinger's suspicions were noted again on May 22, 2007 (Doc. 53-9), at which time he emailed plaintiff and Bolen about certain issues with a loan closing.  The following day, May 23, 2007, Mersinger sent another email to plaintiff and Bolen that no "side" deals whatsoever would be allowed regarding the same Goode closing (Doc. 53-10).  Mersinger also expressed his concerns to  Illinois Housing Program Director, Ramsey, in May of 2007 (Doc. 53-8 at 4).  At some point thereafter, plaintiff became aware that she, along with Bolen, were being investigated by the USDA with respect to their dealings with Goode, but Mersinger's suspicions were clearly expressed long before plaintiff filed her EEOC complaint in August of 2007.

As noted above at pages 5-6, the USDA State Director, Wilson, conducted an investigation and made the decision to suspend plaintiff based upon plaintiff's acceptance of an altered loan document in December 2006, and her subsequent failure to report the issue to her supervisors. Wilson determined that plaintiff engaged in inappropriate conduct in her dealings with Goode, and that this determination was supported by the evidence and warranted a suspension from duty. Plaintiff was suspended without pay for five (5) working days from December 6, 2007 through December 12, 2007.  Because plaintiff was suspended without pay, plaintiff has at least raised a genuine issue that she suffered an adverse employment action after she engaged in statutorily protected activity.

Again, plaintiff does not inform the Court under which method of proof she intends to proceed, and the Court will, therefore, consider plaintiff's claims under both methods.  Plaintiff has not provided direct evidence of retaliation, nor has she provided circumstantial evidence which would point the Court directly to a discriminatory reason for her suspension.  In other words, plaintiff has not provided evidence that she suffered this suspension as a result of, or because of, filing an EEOC complaint.  None of plaintiff's evidence points directly to improper reasons for Mersinger's or the USDA's actions, or suggests that plaintiff's five (5) day suspension occurred as a result of her filing a sexual harassment claim, or that her claim contributed to the decision to suspend her. Given that plaintiff's loan transactions with Goode were questioned before the plaintiff filed her complaints, and defendants' evidence that plaintiff acted insubordinately regarding these loan transactions, nothing with regard to this situation would allow a fact-finder to infer that plaintiff was suspended for an improper reason.  Notably, plaintiff makes no attempt to causally connect any circumstantial evidence to the suspension.

26

With respect to the indirect method of proof, one element plaintiff must establish as part of her prima facie claim of retaliation is that she was treated worse than similarly situated employees who had not filed previously filed a claim under Title VII.  "A similarly situated employee is one who is 'directly comparable' to the plaintiff 'in all material respects.'"  *Williams v. Shinseki*, 373 F. App'x 611, 615 (7th Cir. 2010 ) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006)).  In other words, plaintiff must show "that the comparators 'occupied the same job level and engaged in similar past misconduct' but were nonetheless subject to more favorable disciplinary action."  *Williams,* 373 F. App'x at 616 (quoting *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005)).  The Seventh Circuit has recently noted that "[i]n the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotations omitted).  Plaintiff presents no such evidence.  Plaintiff did not identify similarly situated individuals who received better treatment, nor did she present evidence that she met the USDA's legitimate employment expectations, or was performing her job in a satisfactory manner.  In fact, defendants provided evidence that a similarly situated employee, Bolen, who had *not* filed a previous complaint pursuant to Title VII, had been subject to the exact same disciplinary action as plaintiff, a five (5) day suspension without pay, as a result of the investigation into the suspicious loan transactions.

In her response to defendants' motion for summary judgment, plaintiff makes the following unsupported statement: "no other similarly situated employee who did not engage in protected activity suffered an adverse employment action from Defendant Mersinger."  (Doc. 54 at 11).  At

27

the summary judgment stage, this is simply not enough, especially in light of defendants' submission of evidence that a similarly situated employee who did not engage in protected activity was subject to the same adverse employment action.  "As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotations omitted).

While plaintiff failed to direct the Court's attention to a specific comparator, defendants point to Bolen, who worked with plaintiff in the same office as an office technician, who was subject to the same rules and supervisor as plaintiff, who engaged in similar conduct as plaintiff in that she participated in the 2005 mediation, who emailed the photograph of Mersinger in overalls, acted with plaintiff to help Goode, and also who received a five (5) day suspension without pay.  Bolen did not, however, file an EEOC claim, yet her conduct was investigated and resulted in the same punishment that plaintiff received.  Summary judgment is appropriate if plaintiff fails to demonstrate a prima facie case of retaliation by "failing to identify similarly situated employees who did not file EEOC charges and were treated more favorably." *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005). Plaintiff has failed to identify such individuals, making summary judgment appropriate here.

As with the first claim of retaliation, even if plaintiff had established a prima facie case, defendants have provided legitimate, non-discriminatory reasons for plaintiff's five (5) day suspension without pay, and plaintiff has pointed to no specific facts which cast doubt on those proffered reasons.  Plaintiff has presented no evidence that this suspension constituted pretext for retaliation, or to cast doubt on defendants reasons for the suspension.  "While Title VII protects victims of sexual harassment from being terminated in retaliation for reporting harassment, an

employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 359 (7th Cir. 2002).

Accordingly, the Court **GRANTS** defendants' motion for summary judgement on Count II, plaintiff's claims of retaliation.

### c.  Any Claims of Constructive Discharge

The Court notes that throughout her second amended complaint, plaintiff alleges that she was essentially "forced" to resign from her position in 2008 due to discriminatory harassment and hostile work environment, which equates to a general claim of constructive or wrongful discharge from federal employment.

The plaintiff must satisfy a number of prerequisites to file a Title VII claim in federal court: (1) plaintiff must file a charge with the EEOC regarding the alleged discriminatory conduct within the statutory time limitation, (2) the EEOC must issue a right-to-sue letter, and (3) the plaintiff must only bring those claims that are within the scope of the charges previously filed with the EEOC. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).  Whether a particular claim "was within the scope of [an] EEOC charge is a question of law." *Id.*

> An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. This limitation is consistent with the principle of primary jurisdiction in the agency, for it gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts.

*Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Defendants assert that plaintiff failed to exhaust administrative remedies with regard to her allegations of wrongful or constructive discharge in that she belatedly tried but failed to include a

constructive discharge claim in her EEOC complaint seven months after the parties had finished briefing the USDA's motion for summary judgment (in late May of 2009).  The EEOC ALJ denied her motion for leave to include this claim based on her conclusion that only the Merit Systems Protection Board ("MSPB") has jurisdiction to hear such claims (Doc. 44-1).  In response, plaintiff asserts that her allegations of harassment, her prior EEO complaints, and subsequent reprisal and retaliation were presented to the agency and the EEOC, that there is a clear nexus between the harassment and retaliation and the constructive discharge claim, and that she may pursue such a claim even though it was not explicitly included in her EEOC complaint because her allegations fall within the scope of the charges contained in the EEOC complaint.

"Whether the EEOC was provided the opportunity to investigate and reconcile the claim" is key, and "an improper refusal to amend a charge . . . by the EEOC will not bar a plaintiff from bringing suit."  *Atkinson v. Washinton Intern. Ins. Co.*, No. 92 C 8430, 1995 WL 68756, at *9 (N.D. Ill. 1995) (citing *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 388 (9th Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991)).  In other words, "[t]he standard is not whether the EEOC in fact considered the charges but whether the charges were brought to its attention."  *Atkinson*, 1995 WL 68756 at *9 (citing *Rush*, 966 F.2d at 1112)).  A potential claim should not be doomed as a result of "an administrative oversight, or even worse, a lack of interest or diligence on the part of they agency," but this premise is inapplicable "where the agency's alleged failure to consider . . . claims was not the product of administrative inaction, but rather is the result of [the employee's] own failure to bring all of these claims to its attention."  *Rush*, 966 F.2d at 1112.

Plaintiff does not allege that she presented or appealed her constructive discharge claim to the MSPB as the EEOC ALJ order instructed, nor does she allege that the EEOC ALJ's

jurisdictional determination was in error, or was an improper refusal to amend a charge.[6]  Further,

plaintiff has not presented this Court with a "Right to Sue" letter which includes her constructive

discharge claim.  Because plaintiff did not allege procedural or any other error by the agency, she

did not raise a genuine issue as to this fact.  Plaintiff's only argument is that the agency should have

known of her constructive discharge claims based on her EEOC complaints, but this argument has

---

[6]The Court notes that "[r]esignation is not a personnel action within the scope of the MSPB's review, though constructive discharge is."  *McCarthy v. Vilsack*, 322 F..App'x 456, 458 (7th Cir. 2009) (citing *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001).  "The MSPB possesses jurisdiction over an appeal filed by an employee who has resigned or retired if the employee proves, by a preponderance of the evidence, that his or her resignation or retirement was involuntary and thus tantamount to forced removal."  *Shoaf*, 260 F.3d at 1341.  In other words, "an involuntary resignation constitutes a constructive removal that is appealable to the MSPB."  *Id.*

> A federal employee aggrieved by a personnel action that is reviewable by the MSPB has two paths of redress if he attributes the employing agency's decision, at least in part, to discriminatory animus.  One option is to file with the agency a "mixed case complaint"- an administrative complaint alleging prohibited employment discrimination "related to or stemming from an action that can be appealed to" the MSPB.  *See* 5 U.S.C. § 7702(a)(2); 29 C.F.R. § 1614.302(a)(1), (b); *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 470 (6th Cir. 2003); *Wells v. Shalala*, 228 F.3d 1137, 1142-43 (10th Cir. 2000).  The second option is to bypass the agency's administrative process and file a "mixed case appeal" directly with the MSPB.  *See* 5 U.S.C. §§ 7513(d), 7702(a)(1); 5 C.F.R. §§ 1201.22(b)(1), 1201.151; 29 C.F.R. § 1614.302(a)(2), (b); *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc); *Chappell v. Chao*, 388 F.3d 1373, 1375 (11th Cir. 2004).  If the MSPB reaches the merits of the case but issues an unfavorable ruling, the employee may file a civil action in the district court either with or without first petitioning the EEOC to review the MSPB's determination that the personnel action did not result from unlawful discrimination.  *See* 5 U.S.C. § 7702(a)(3), (b); 5 C.F.R § 1201.157; *Coffman v. Glickman*, 328 F.3d 619, 622 (10th Cir. 2003).  If, however, the MSPB dismisses the mixed appeal on the ground that the personnel action is not one within its purview, then the employee's only recourse is to appeal to the Federal Circuit.  *See* 5 U.S.C. § 7703(b)(1); 28 U.S.C.A. § 1295(a)(9); *Sloan v. West*, 140 F.3d 1255, 1261-62 (9th Cir. 1998).  That is, the EEOC cannot review an MSPB decision that doesn't resolve the merits of an employee's claim of unlawful discrimination, nor can the employee file a civil complaint in district court; the discrimination claim will be extinguished unless the Federal Circuit reverses the MSPB's jurisdictional dismissal.  *See* 5 U.S.C. § 7702(b)(3); *Burzynski v. Cohen*, 264 F.3d 611, 620 (6th Cir. 2001); MERIT SYSTEMS PROTECTION BOARD, RIGHTS AND REMEDIES § 8.04 (Law Journal Press 2009).

*McCarthy*, 322 F. App'x at 457-58.

been rejected by this circuit where the relevant instance is not reasonably related to the EEOC claims, and occurred after the EEOC charges were filed.  *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009).  The *Teal* court noted that allowing a plaintiff to proceed on such a claim would frustrate the purposes of the exhaustion requirement, and the plaintiff "should have initiated an additional EEOC complaint" after her termination "in order to properly allow the agency to try to resolve the matter and fulfill its obligation to investigate the facts and circumstances related to the . . . dismissal." *Id.*

Here, constructive discharge could not possibly have been included in plaintiff's EEOC complaints which were filed in August and October 2007, because plaintiff did not resign until April, 2008.  *See Conner*, 413 F.3d at 680 (district court could not consider plaintiff's non-promotion claim where the EEOC did not have the opportunity to investigate the potentially discriminatory conduct and resolve any issues, and it would have been impossible for the EEOC to do so where plaintiff's EEOC charges were dated November 1, 2002, and the non-promotion occurred in December, 2002).

Plaintiff does not claim that she initiated an additional EEOC complaint, or, as advised by the EEOC, filed a separate complaint of constructive discharge with the MSPB "in order to properly allow the agency to try to resolve the matter and fulfill its obligation to investigate the facts and circumstances" related to plaintiff's alleged constructive discharge.  *Teal*, 559 F.3d at 693.  Notably, plaintiff was represented by counsel at the time of the EEOC ALJ's decision denying plaintiff's motion to amend, and, therefore, was not attempting to navigate the process without legal assistance. Plaintiff has, therefore, failed to exhaust administrative remedies with respect to her constructive

discharge claims.[7]

Even if the Court could consider plaintiff's constructive discharge claims based on sexual harassment and retaliation, they would fail.  "[C]onstructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntary resignation." *Roby*, 579 F.3d at 785.  The plaintiff must show "a more egregious situation than a hostile work environment because an employee is normally expected to continue working while seeking redress." *Id*.  The Court analyzes the employee's work environment from a reasonable employee viewpoint, and the plaintiff must present evidence, for example, that a reasonable person would have felt so threatened that she needed to quit her job for her own protection, in order to establish a constructive discharge claim.  *Id*.

Notably, the Seventh Circuit has concluded that a claim of constructive discharge based upon an employer's "toleration" of harassment fails where the alleged harassing conduct does not in fact constitute harassment. *Nuzzi v. Bourbonnais Elementary School Dist.*, 360 F. App'x 664, 667 (7th Cir. 2010) (citing *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004)).  In other words, "an employee can be constructively discharged only if the underlying working conditions were themselves unlawful or discriminatory in some fashion." *Gawley v. Indiana Univ.*, 276 F.3d 301, 315 (7th Cir. 2001).

----

[7]An alternative view of plaintiff's constructive discharge claim, which ultimately leads to the same result, is that although she may have attempted to belatedly amend her EEOC claim, she essentially abandoned the administrative process with respect to this claim.  Notably, "[a] plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts." *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995), *cert. denied*, 519 U.S. 836 (1996); *see also Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 771 (9th Cir. 1991) ("Previous decisions by this court and others have held that abandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review.").

To the extent plaintiff alleges she was constructively discharged, based, at least in part, on sexual harassment by Mersinger, she has not shown that Mersinger's conduct constituted sexual harassment, or was otherwise illegal, and therefore strict employer liability can not be found here. *See Gawley*, 276 F.3d at 315.  Furthermore, plaintiff could not establish a hostile work environment based on sexual harassment, foreclosing the possibility that she could establish the higher standard of egregious activity required to establish constructive discharge.  *See Roby*, 579 F.3d at 785.

To the extent that plaintiff claims she was constructively discharged based, at least in part, on retaliation, plaintiff's claims would fail as well.  Plaintiff failed to establish the requisite elements of retaliation, and thereby failed to show that Mersinger's or the Agency's actions in any way constituted discrimination, harassment, or were otherwise illegal.  Without such a showing, plaintiff's claim of constructive discharge on the basis of retaliation would necessarily fail.  *See Gawley*, 276 F.3d at 315.

To the extent that the plaintiff alleges that IIED and FMLA violations are evidence of or led to constructive discharge, these claims are clearly precluded by the fact that plaintiff plainly admitted that these claims were never brought before the agency, essentially pleading herself out of court with respect to these particular issues.

Because plaintiff failed to exhaust administrative remedies, and it is unclear whether it is too late for plaintiff to obtain administrative review of her claim, plaintiff's claim of constructive discharge must be dismissed as premature without prejudice to bringing suit if and when she exhausts her administrative remedies.  *See Teal*, 559 F.3d at 693.  Accordingly, plaintiff's claim of wrongful or constructive discharge is **DISMISSED WITHOUT PREJUDICE.**

## II.  Count III - Intentional Infliction of Emotional Distress ("IIED")

In Count III of her Second Amended Complaint, plaintiff alleges that defendants caused her to suffer great emotional distress. Plaintiff asserts that defendants knew she was in physical pain because of her back condition, and was emotionally upset as a result of the sexual harassment and retaliation, but even so, they set out to make plaintiff's work environment such that she would resign.  Plaintiff alleges that as a direct and proximate result of defendants actions, she suffered "grave emotional distress and profound loss of enjoyment of life, had to resign her position with the USDA, has significant lost wages, has had a diminished retirement, and suffered physical and mental problems with damages exceeding $100,000."  (Doc. 38 at 5-6).

Defendants assert that plaintiff has not complied with the Federal Tort Claims Act, nor has she alleged she has done so, and this claim should, therefore, be dismissed.  Plaintiff admits this defect in her response to defendants' motion to dismiss (Doc. 50), in which she admits in paragraph 11: "Plaintiff did not make any complaint with the Agency or give notice under F.M.L.A. or a state tort for the intentional infliction of emotional distress as pled under Counts III and IV. WHEREFORE, it is respectfully requested that the Defendants' Motion to Dismiss be denied as to the retaliation claim."  Plaintiff, through these statements, concedes that the intentional infliction of emotional distress claim was not appropriately presented for administrative review, and she does not dispute its dismissal, as she only requests that dismissal be denied as to the retaliation claims. However, in her response to defendants' motion for summary judgment, plaintiff does an about-face and claims she has established a prima facie case of IIED in her response to defendants' motion for summary judgment (Doc. 54 at 15).

The Seventh Circuit has repeatedly held that failure to exhaust administrative remedies under

the Federal Tort Claims Act precludes review in the district court.  *See Frey v. E.P.A.*, 270 F.3d
1129, 1135-36 (7th Cir. 2001) (considering whether the failure to exhaust deprives the district court
of subject matter jurisdiction over the claim or not, but declining to resolve the issue, noting that
failure to exhaust properly resulted in dismissal of the claim at issue).  The Federal Tort Claims Act,
28 U.S.C. § 2675(a), specifically provides that:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, unless the claimant shall have
> first presented the claim to the appropriate Federal agency and his claim shall have
> been finally denied by the agency in writing and sent by certified or registered mail.
> The failure of an agency to make final disposition of a claim within six months after
> it is filed shall, at the option of the claimant any time thereafter, be deemed a final
> denial of the claim for purposes of this section. The provisions of this subsection
> shall not apply to such claims as may be asserted under the Federal Rules of Civil
> Procedure by third party complaint, cross-claim, or counterclaim.

In light of plaintiff's admission that she never sought administrative review of this tort claim before

presenting the claim in this Court, as required by the FTCA, Plaintiff's claim of intentional infliction

of emotional distress as to the USDA is **DISMISSED WITHOUT PREJUDICE** as premature for

failure to exhaust administrative remedies.

One issue remains, however, with regard to this claim, and it is that the plaintiff also alleges

a tort against Mersinger, without specifying whether the claim was against Mersinger in his official

or individual capacity.  Although neither party specifically raised this issue, "[i]t is the responsibility

of a court to make an independent evaluation of whether subject matter jurisdiction exists in every

case." *Foster v. Hill*, 497 F.3d 695, 697 (7th Cir. 2007).  Notably, the Westfall Act, 28 U.S.C. §

2679, "accords federal employees absolute immunity from common-law tort claims arising out of

acts they undertake in the course of their official duties."[8]  *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

> The Westfall Act provides that when federal employees are sued in tort for actions that the Attorney General determines were within the course and scope of their employment, the suit is deemed to be against the United States and the United States "shall be substituted" as the party defendant. 28 U.S.C. § 2679(d)(1). If the Attorney General declines to certify that the actions were within the scope of the employment, the defendant may petition the trial court to make such a finding. 28 U.S.C. § 2679(d)(3). If the United States is substituted as the defendant, the remedy against the United States is the exclusive remedy and any other action (specifically, any action against the defendant in his or her individual capacity) is precluded. 28 U.S.C. § 2679(b)(1).

*Foster*, 497 F.3d at 696.  Here, the Court has not been provided with proof that the Attorney General has certified that Mersinger's actions were within the course and scope of his employment, nor has Mersinger petitioned the Court to make such a finding.  The motion, on this ground, is **DENIED** at this time.  Defendant may file a new motion, properly supported by an affidavit as to whether Mersinger was acting within the scope of his employment, if appropriate.

### III.  Count IV - Violation of Family Medical Leave Act

In Count IV of plaintiff's second amended complaint, she claims that defendants intentionally retaliated against her based upon her need to take periodic breaks due to a serious back condition in violation of the FMLA. Specifically, plaintiff claims that she took a trip to Peoria, Illinois, in March 2007, for a training seminar, sat for a lengthy period of time at the seminar, and then needed to make stops on the return trip due to serious back pain.  Plaintiff alleges that defendants knew plaintiff would need "periodic leave" from work, but accused her of "travel fraud"

---

[8]Two exceptions to absolute immunity exist in that the United States may not be substituted for federal employees, where the claim is brought for (1) the violation of the United States Constitution, also known as a Bivens action; or (2) the violation of a federal statute. *Chapman v. U.S. Marshal for N. Dist. of Ill.*, 584 F.Supp.2d 1083, 1088 n.6 (N.D. Ill. 2008) (citing 28 U.S.C. §§ 2679(b)(2)(A) and (b)(2)(B)).

regarding the travel voucher submitted for the Peoria trip.  Plaintiff alleges that this allegation was very serious, caused her tremendous emotional distress, that defendants knew plaintiff was in a weakened emotional condition but made her work environment hostile and intolerable until she was "forced" to resign.  Furthermore, plaintiff alleges that she was retaliated against for taking periodic leave under the FMLA, that the allegation of fraud lacked any basis, and therefore asks for an award in excess of $100,000 on this Count.

Defendants assert that plaintiff did not comply with the FTCA and therefore cannot now bring a claim of retaliation for taking family medical leave.  They also assert that plaintiff misapplied the FMLA, and that plaintiff's FMLA claims are barred by the statute of limitations.

In plaintiff's response she admits: "Plaintiff did not make any complaint with the Agency or give notice under F.M.L.A. . . . as pled under Count[] . . . IV.  WHEREFORE, it is respectfully requested that the Defendants' Motion to Dismiss be denied as to the retaliation claim."  (Doc. 50 at para. 11).  Plaintiff, through these statements, concedes that the FMLA claims in Count IV were not appropriately presented for administrative review, and she does not dispute their dismissal, as she only requests that dismissal be denied as to the retaliation claim.

Just as in Count III, however, plaintiff curiously argues for the survival of Count IV in her response to defendants' motion for summary judgment.  She asserts that she fulfilled her obligations under the FMLA by notifying the Defendant and providing letters from healthcare providers that she had a serious condition, but that defendant did not follow the proper procedure for FMLA leave, but instead harassed the plaintiff until she was forced to resign.

Defendants do not challenge plaintiff's FMLA claim based on subject matter jurisdiction, but this Court may raise this issue *sua sponte*, at any point in the proceedings.  *See* Fed. R. Civ. P.

12(h)(3).  "Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself."  *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008).

The Court questions jurisdiction on the basis that certain federal employees, in contrast to private employees, are not entitled to a private right of action to enforce the FMLA.  In other words, plaintiff may be "statutorily ineligible" for protection pursuant to Title I of the FMLA.  *See Weesner v. Glickman*, 59 F.Supp.2d 783, 787 (N.D. Ind. 1999); *see also, Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018-19 (9th Cir. 1999).

The Northern District of Illinois considered a similar situation in *Weesner*, 59 F.Supp.2d 783. Weesner, who was employed by the USDA at its Agricultural Research Center in West Lafayette, Indiana, alleged that he took leave pursuant to the FMLA, and that he was entitled to protection under Title I of the FMLA.  *Id.* at 784-85.

The *Weesner* court concluded that because plaintiff alleged that he was employed by the USDA (which at that time was headed by Glickman, who was appointed by the president), plaintiff fell within the definition of an "employee" in 5 U.S.C. § 2105, and thus within 5 U.S.C. § 6301(2), 5 U.S.C. § 6381(1), and 29 U.S.C. § 2611(2)(B).  *Id.* at 787.  The court held that the plaintiff was, therefore, not eligible for protection under Title I of the FMLA, as he was excluded under 29 U.S.C. § 2611(2)(B)(I), and that his claim must be dismissed.[9]  *Id.*

Similarly, the Fourth and Ninth Circuits have held that both Title I and Title II employees are afforded the same rights under the FMLA with regard to leave time, but Title I expressly

---

[9]The *Weesner* court thoroughly analyzed the statutory framework regarding this jurisdictional issue, and this Court adopts the same construction of the statutes without repeating the entire analysis here.  59 F.Supp.2d at 786-87.

provides a private right of action for employer action violating FMLA rights, while Title II does not.

Absent an "unequivocally expressed waiver," suits against the government are barred by sovereign

immunity. *Russell*, 191 F.3d at 1019; *Mann*, 120 F.3d at 37.  Stated another way:

> No unequivocal waiver of immunity exists in Title II, and, consequently, the omission of a provision in Title II similar to that in Title I creating a private right of action is treated as an affirmative congressional decision that the employees covered by Title II of the FMLA should not have a right to judicial review of their FMLA claims through the FMLA. Accordingly, Title II of the FMLA creates neither an express nor an implied right of action whereby . . . employees may obtain judicial review of adverse employment decisions.

*Mann*, 120 F.3d at 37.[10]

In her second amended complaint, plaintiff alleges that she was employed by the United

States Department of Agriculture from June 30, 1997, until her resignation (Doc. 38).  The USDA

is headed by Tom Vilsack, who was appointed by the president, which makes plaintiff ineligible for

protection under Title I of the FMLA, as she is excluded under 29 U.S.C. § 2611(2)(B)(I).  *Weesner*,

59 F.Supp.2d at 787. "As the party seeking to sue a federal agency, . . . , [p]laintiff bears the burden

of identifying an unequivocal waiver of immunity," and plaintiff's limited allegations do not

establish that she qualifies as a Title I employee.  *Luat v. Mabus*, No. 11 CV 0496 MMA (POR),

2011 WL 6152285 at *2 (S.D. Cal. December 12, 2011) (citing *Holloman v. Watt*, 708 F.2d 1399,

---

[10]"[A] consensus among the circuits has evolved that, the absence of an express waiver of the government's sovereign immunity in Title II of the FMLA bars private suits for violations of its provisions." *Luat v. Mabus*, No. 11 CV 0496 MMA (POR), 2011 WL 6152285 at *2 (S.D. Cal. December 12, 2011) (internal quotation omitted) (citing *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir.1997); *Burg v. United States Dept. of Health & Human Servs.*, 387 F. App'x 237, 240 (3d Cir. July 21, 2010); *Weesner v. Glickman*, 59 F.Supp.2d 783, 787 (N.D. Id. 1999); *Taylor v. Geren*, 2008 U.S. Dist. LEXIS 79935 *10–11, 2008 WL 4531704 (E.D.Ak. Oct. 8, 2008); *Swafford v. Mukasey*, 2008 U.S. Dist. LEXIS 35609 *1–2 (E.D. Ky. April 30, 2008); *Martinez v. Snow*, 2006 U.S. Dist. LEXIS 93191 *12–13, 2006 WL 3654618 (E.D.Cal. Dec. 12, 2006); *Buesgens v. Snow*, 2006 U.S. Dist. LEXIS 98276 *19–20 (W.D.Tex. Dec. 6, 2006); *Garcia Beauchat v. Mineta*, 2006 U.S. Dist. LEXIS 67844 *26–27, 2006 WL 2711608 (E.D.N.Y. Sept. 21, 2006); *Southerland v. Bowles*, 1995 U.S. Dist. LEXIS 11018 *6 (E.D.Mich. Jan. 7, 1995)).

1401 (9th Cir. 1983)).  Plaintiff's claim of FMLA violation is, therefore, **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

## **CONCLUSION**

Counts I and II and all claims of constructive discharge contained in plaintiff's second amended complaint as to Defendant Mersinger and Defendant USDA are **DISMISSED WITH PREJUDICE**, and the Court **SUBSTITUTES** Tom Vilsack, Secretary of the Department of Agriculture as the proper party defendant in Counts I and II, and any claims of constructive discharge.

The Clerk of Court is **DIRECTED** to add Tom Vilsack, Secretary of the Department of Agriculture, as a defendant in this action.

Defendant Tom Vilsack's motion for summary judgment is **GRANTED** as to Count I, sexual harassment, and Count II, retaliation, of plaintiff's Second Amended Complaint.

Plaintiff's claims of wrongful or constructive discharge are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Count III of plaintiff's second amended complaint, intentional infliction of emotional distress as to Defendant USDA is **DISMISSED WITHOUT PREJUDICE** as premature for failure to exhaust administrative remedies.  Defendants' motion to dismiss Defendant Mersinger on Count III is **DENIED** with leave to file a new, properly supported motion.

Count IV of plaintiff's second amended complaint for violation of or retaliation under the FMLA is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**DATE:  17 September, 2012**

41

**/s/  WILLIAM D. STIEHL**
**DISTRICT JUDGE**